```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
AOZORA BANK LTD.,                        :
                                         :  11 Civ. 5683 (DLC)
                  Appellant,             :
----------------------------------------:
MEL ENTERPRISES LTD.,                    :
                                         :  11 Civ. 5805 (DLC)
                  Appellant,             :
----------------------------------------:
COLLACE SERVICES LIMITED,                :
                                         :  11 Civ. 6127 (DLC)
                  Appellant,             :
----------------------------------------:
FELKIRK LIMITED,                         :
                                         :  11 Civ. 6128 (DLC)
                  Appellant,             :
----------------------------------------:
ANGELS PARK MANAGEMENT SA,               :
                                         :  11 Civ. 6129 (DLC)
                  Appellant,             :
----------------------------------------:
SAUCELLE INVESTMENT SA PANAMA,           :
                                         :  11 Civ. 6130 (DLC)
                  Appellant,             :
----------------------------------------:
BRIGHT COLORS DESIGN CENTER INC. PANAMA, :
                                         :  11 Civ. 6131 (DLC)
                  Appellant,             :
----------------------------------------:
US TRUST CO UD PETER M. LEHRER, et al.   :
                                         :  11 Civ. 6273 (DLC)
                  Appellants,            :
----------------------------------------:
MILTON FINE REVOCABLE TRUST and MILTON   :
FINE 1997 CHARITABLE REMAINDER UNITRUST, :  11 Civ. 6274 (DLC)
                                         :
                  Appellants,            :
----------------------------------------:
AXA PRIVATE MANAGEMENT,                  :
                                         :  11 Civ. 6275 (DLC)
                  Appellant,             :
----------------------------------------:
```

```
-----------------------------------------:
BRAYMAR HOLDINGS LIMITED,                 :
                                          :  11 Civ. 6276 (DLC)
                       Appellant,         :
-----------------------------------------:
BARBARA SCHERR, et al.,                   :
                                          :  11 Civ. 6277 (DLC)
                       Appellants,        :
-----------------------------------------:
BRICKLAYERS AND ALLIED CRAFTSMAN LOCAL 2: 
ANNUITY FUND,                             :  11 Civ. 6355 (DLC)
                                          :
                       Appellant,         :
-----------------------------------------:
OVERSEA CHINESE BANK NOMINEES PTE LTD.    :
                                          :  11 Civ. 6356 (DLC)
                       Appellant,         :
-----------------------------------------:
PRIVAT FONDOS GLOBAL F.I., et al.,        :
                                          :  11 Civ. 6357 (DLC)
                       Appellants,        :
-----------------------------------------:
UPSTATE NEW YORK BAKERY DRIVERS AND       :
INDUSTRIAL PENSION FUND,                  :  11 Civ. 6358 (DLC)
                                          :
                       Appellant,         :
-----------------------------------------:
JAMES L. KRUSE, et al.,                   :
                                          :  11 Civ. 6473 (DLC)
                       Appellants,        :
-----------------------------------------:
COLSON H. HILLIER, JR., et al.,           :
                                          :  11 Civ. 6474 (DLC)
                       Appellants,        :
-----------------------------------------:
WILLIAM B. KORB IRA, et al.,              :
                                          :  11 Civ. 6551 (DLC)
                       Appellants,        :
-----------------------------------------:
PETER A. CARFEGNA CHARITABLE REMAINDER    :
TRUST,                                    :  11 Civ. 6552 (DLC)
                                          :
                       Appellant,         :
-----------------------------------------:
```

```
-----------------------------------------:
NEVA ROSAMILIA AND NICHOLAS ROSAMILIA,    :
                                          :   11 Civ. 6553 (DLC)
                    Appellants,           :
-----------------------------------------:
JOHN E. GUINNESS REVOCABLE TRUST,         :
                                          :   11 Civ. 6554 (DLC)
                    Appellant,            :
-----------------------------------------:
NBK BANQUE PRIVEE (SUISSE) S.A. AND       :
NATIONAL BANK OF KUWAIT S.A.K,            :   11 Civ. 6565 (DLC)
                                          :
                    Appellants,           :
-----------------------------------------:
STICHTING SHELL PENSIOENFONDS,            :
                                          :   11 Civ. 6996 (DLC)
                    Appellant,            :
-----------------------------------------:
THE TRUSTEES OF TUFTS COLLEGE,            :
                                          :   11 Civ. 6997 (DLC)
                    Appellant,            :
-----------------------------------------:
CARTENSEN, et al.,                        :
                                          :   11 Civ. 6998 (DLC)
                    Appellants,           :
-----------------------------------------:
SEGEL,                                    :
                                          :
                    Appellant,            :
                                          :
          v.                              :   11 Civ. 6999 (DLC)
                                          :
SECURITIES INVESTOR PROTECTION            :
CORPORATION and IRVING H. PICARD,         :
                                          :
                    Appellees.            :
-----------------------------------------X
IN RE BERNARD L. MADOFF INVESTMENT        :
SECURIITIES, LLC,                         :          OPINION & ORDER
                                          :
                    Debtor.               :
-----------------------------------------X
```

DENISE COTE, District Judge:

Investors in various "feeder funds" that invested in Bernard L. Madoff Investment Securities, LLC ("BLMIS") appeal from a Decision of the Honorable Burton R. Lifland, Bankruptcy Judge, in the BLMIS liquidation proceedings (the "Decision") denying their claims. Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 454 B.R. 285 (Bankr. S.D.N.Y. 2011). Because these investors do not qualify as "customers" under the plain language of the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa et seq., the Decision is affirmed.

BACKGROUND

The appellants are investors in one or more of sixteen so-called "feeder funds," which consist of limited partnerships organized in Delaware or New York, a limited liability company organized in New York, and companies organized in the Cayman Islands and the British Virgin Islands ("BVI") (collectively, the "Feeder Funds").[1] These Feeder Funds, in turn, invested a significant portion of their assets with BLMIS. The appellants believed that BLMIS would invest the Feeder Funds' assets. Instead, Bernard L. Madoff ("Madoff"), the sole member and principal of BLMIS, stole them.

---

[1] The claims at issue in this appeal were filed by 1,771 investors.

4

Madoff was arrested and charged with securities fraud on
December 11, 2008.  On December 15, 2008, the United States
District Court for the Southern District of New York entered an
order placing BLMIS's customers under the protections of SIPA.
SIPA provides certain benefits to customers of failed brokerage
firms.  In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d 229, 233
(2d Cir. 2011).  During a SIPA liquidation, customers share in
the recovery of "customer property," which generally consists of
the cash and securities held by the liquidating broker-dealer
for customers, on the basis of their respective "net equities"
and to the exclusion of the brokerage firm's general creditors.
15 U.S.C. §§ 78fff-2(b) and (c)(1); In re New Times Sec. Servs.,
Inc., 463 F.3d 125, 128-29 (2d Cir. 2006).  Where customer
property is insufficient to satisfy the claims of customers,
SIPA permits the Securities Investor Protection Corporation
("SIPC") to make advances to the SIPC trustee ("Trustee"),
within the statutory limits of protection from the SIPC Fund.
For customers with securities accounts, SIPC may advance not
more than $500,000 per customer.  15 U.S.C. §§ 78ddd, 78fff-
3(a); In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d at 233.

The appellants filed timely claims in order to recoup
losses based on their investments in the Feeder Funds.  The
Trustee denied the appellants' claims, determining that although
the Feeder Funds themselves qualified as "customers" of BLMIS

under SIPA, the appellants did not.  The appellants contested

this determination.  On June 11, 2010, the Trustee filed a

motion before the Bankruptcy Court requesting, <u>inter</u> <u>alia</u>, an

order upholding his denial of appellants' claims.  The Trustee

has determined that the Feeder Funds themselves qualify as

customers of BLMIS and the appellants do not take issue with

that determination.

In its Decision of June 28, 2011, the Bankruptcy Court

granted the Trustee's motion.  The Bankruptcy Court found that

the Feeder Funds share the following five characteristics:

> (1) they were created as investment vehicles and are
> legal entities that are capable of owning property and
> suing or being sued; (2) they sold ownership interests
> in themselves, either directly or indirectly, to the
> [appellants] and others, and used monies obtained from
> such sales for investment purposes; (3) their managers
> and administrators were responsible for managing and
> directing the Feeder Funds' investments; (4) they
> invested directly with BLMIS and maintained BLMIS
> accounts according to the books and records of BLMIS;
> and (5) they do not include ERISA plans (and other
> entities whose property is treated as ERISA plan
> property), trusts, or pass-through, self-directed, or
> custodial vehicles such as banks, brokers or dealers.

Decision, 454 B.R. at 292.  The Bankruptcy Court observed that

the appellants were provided with prospectuses, private

placement memoranda, and other explanatory material prior to

investing in the Feeder Funds that expressly stated the

following:

> (i) the Feeder Funds were legal entities separate and
> apart both from BLMIS and from the [appellants]

6

themselves; (ii) each of the [appellants] purchased an
ownership interest in at least one of the Feeder
Funds, and not in the assets of the Feeder Fund, (iii)
the [appellants] yielded the exclusive right to make
all decisions concerning the investment and other
disposition of Feeder Fund assets to managers of the
Feeder Funds, including . . . whether to afford
investment discretion to any third-party investment
professional; and (iv) the Feeder Funds were not
required to, nor did they, consult with any of the
[appellants] prior to issuing transactional
instructions regarding Feeder Fund assets held in the
Feeder Funds' BLMIS accounts.

Id. at 293.  The Bankruptcy Court found no evidence indicating

that BLMIS intended to authorize the Feeder Funds to act on its

behalf or that any of the Feeder Funds were agents of BLMIS.

Id. at 304-05.  In light of these findings, the Bankruptcy Court

concluded that appellants are not "customers" of BLMIS pursuant

to the plain language of SIPA, the relevant case law, and

principles of agency or equity.

    Notices of appeal were filed at various dates from August

to October 2011.  The appellants contest the Bankruptcy Court's

ruling on the grounds that it misconstrued the SIPA statute,

that it misconstrued the case law applying SIPA, and that it

erred by refusing to hold an evidentiary hearing on contested

issues of fact.  The Trustee, the Securities and Exchange

Commission ("SEC"), and SIPC have each filed briefs taking the

position that the appellants are not "customers" under SIPA.

DISCUSSION

The standard of review applicable to matters within core
bankruptcy jurisdiction is governed by the Federal Rules of
Bankruptcy Procedure.  On appeal, the court "may affirm, modify,
or reverse a bankruptcy judge's judgment, order, or decree or
remand with instructions for further proceedings."  Fed. R.
Bankr. P. 8013.

"Findings of fact, whether based on oral or documentary
evidence, shall not be set aside unless clearly erroneous."
Id.; see Solow v. Kalikow (In re Kalikow), 602 F.3d 82, 91 (2d
Cir. 2010) (noting that "[f]indings of fact are reviewed for
clear error").  Legal conclusions of the Bankruptcy Court,
however, are "reviewed de novo."  Id.

The principal legal issue on appeal is the interpretation
of SIPA's definition of the term "customer."  Statutory
interpretation must "begin with the language employed by
Congress and the assumption that the ordinary meaning of that
language accurately expresses the legislative purpose."  Engine
Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 541 U.S. 246,
252 (2004) (citation omitted).  If a statute's language is
unambiguous, "the sole function of the courts is to enforce it
according to its terms."  Katzman v. Essex Waterfront Owners
LLC, 660 F.3d 565, 568 (2d Cir. 2011) (citation omitted).  In
other words, "[w]hen a court determines that the language of a

8

statute is unambiguous, its inquiry is complete." <u>United States v. Santos</u>, 541 F.3d 63, 67 (2d Cir. 2008).

When construing the plain statutory text, courts are not to "construe each phrase literally or in isolation." Rather, a court must "attempt to ascertain how a reasonable reader would understand the statutory text, considered as a whole." <u>Pettus v. Morgenthau</u>, 554 F.3d 293, 297 (2d Cir. 2009).  The plain language of a statute is considered in the context in which it is used and the "broader context of the statute as a whole."  <u>In re Ames Dept. Stores, Inc.</u>, 582 F.3d 422, 427 (2d Cir. 2009) (citation omitted).  Thus, "the preferred meaning of a statutory provision is one that is consonant with the rest of the statute." <u>Auburn Hous. Auth. v. Martinez</u>, 277 F.3d 138, 144 (2d Cir. 2002).

The parties agree that the statutory definition of the term customer is unambiguous.[2]  The appellants contend that that definition does not require a customer to have its own account with the "debtor," i.e., the broker/dealer.  They argue that when the three statutory definitions of customer are parsed, they qualify as customers under each of the alternative definitions.

---

[2] The appellants urge that the statutory provision is unambiguous and, as a result, that it would be improper for the Court to examine the legislative history of the provision described by the SEC.

SIPA defines the term "customer" as follows:

> any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer.  The term 'customer' includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities . . . .

15 U.S.C. § 78lll(2) (emphasis supplied).  The first of the three alternative definitions is contained in the first sentence; the remaining two definitions are contained in the second sentence of the definition, that is, the clarification that the term includes persons with claims arising out of sales of "such securities," and persons who have deposited cash with the debtor.

The Second Circuit has noted that "[j]udicial interpretations of 'customer' status support a narrow interpretation of SIPA's provisions."  In re New Times Sec. Servs., Inc., 463 F.3d at 127 (citation omitted).  Cf. S.E.C. v. F.O. Baroff Company, Inc., 497 F.2d 280, 282 (2d Cir. 1974) (declining to apply the "literal definition" of the term customer because SIPA "was not designed to protect a lender in appellant's class").  Under the plain language of SIPA, the appellants do not qualify as customers of BLMIS regardless of

the breadth of the interpretive lens.  The appellants did not
have accounts at BLMIS; only the Feeder Funds had accounts at
BLMIS.

An ordinary reading of the first sentence of SIPA
§ 78lll(2) contemplates two persons -- an investor and a debtor
-- and imposes different requirements on each.  The investor
must have "a claim on account of" certain securities.  The
debtor must have "received, acquired, or held" these same
securities "in the ordinary course of its business as a broker
or dealer."  The debtor also must have "received, acquired, or
held" these same securities "from or for the securities
accounts" of the investor.  Nowhere in this definition is there
any discussion of a third person or entity, wholly independent
of the investor and the debtor.

Moreover, other provisions of SIPA indicate that when the
statute discusses "customer's" accounts, it refers to accounts
that are held with the debtor or that are discernible from a
review of the debtor's records.  For example, SIPA § 78fff-
3(a)(2) provides that "a customer who holds accounts with the
debtor in separate capacities shall be deemed to be a different
customer in each capacity."  15 U.S.C. § 78fff-3(a)(2).
Similarly, SIPA § 78fff-2(f) provides that the SIPC trustee may
"transfer to another member of SIPC . . . all or any part of the
account of a customer of the debtor."  Id. § 78fff-2(f).  In

11

addition, SIPA § 78fff-2(a)(1) directs that notice of the
commencement of SIPA proceedings be "mailed to each person who,
from the books and records of the debtor, appears to have been a
customer of the debtor with an open account within the past
twelve months."  Id. § 78fff-2(a)(1).  See also In re Bernard L.
Madoff Inv. Sec. LLC, 654 F.3d at 237 (relying on the books and
records of the debtor when calculating a customer's "net
equity").

When Congress wished to extend SIPA's protections to
investor accounts held at entities other than the "debtor"
broker/dealer, SIPA did so explicitly.  SIPA § 78fff-3(a)(5)
provides an exception to the requirements for customer status
articulated in § 78lll(2) by granting such status to customers
of banks, brokers, or dealers.  Pursuant to SIPA § 78fff-
3(a)(5), when the net equity claim of a broker, dealer, or bank
against the debtor arose out of transactions for customers of
the broker, dealer, or bank, each customer of the broker,
dealer, or bank "shall be deemed a separate customer of the
debtor."  15 U.S.C. § 78fff-3(a)(5).  The broker, dealer, or
bank itself is not eligible to receive the benefits of
"customer" status.  Id.  This provision would have been
superfluous if the scope of the term "customer" in § 78lll(2)
were broad enough to cover customers of third party entities.

Moreover, it is undisputed that the appellants' Feeder Funds do not qualify for this exception.[3]

The exclusion of entities like the Feeder Funds from SIPA § 78fff-3(a)(5) provides further evidence that the appellants are not "customers" under SIPA § 78lll(2). "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others." United States v. Johnson, 529 U.S. 53, 58 (2000). Rather, "[t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." Id.

In light of SIPA as a whole, then, the most natural reading of the "customer" definition excludes persons like the appellants who invest in separate third-party corporate entities like their Feeder Funds, that in turn invest their assets with the debtor. In such cases, it cannot be said that the debtor BLMIS has "received, acquired, or held" securities "from or for the securities accounts" of the appellants. Rather, any securities were "received, acquired, or held . . . from or for the securities accounts" of the Feeder Funds, and it is those entities that qualify as "customers" under SIPA.

---

[3] It is worth noting as well that the appellants did not have accounts at the Feeder Funds. The appellants purchased ownership shares in the Feeder Funds; those Feeder Funds are independent corporate entities that conducted transactions with BLMIS on their own behalf. Because of this fact, the Feeder Funds are eligible for the benefits of "customer" status, and in fact have already been awarded such status by the Trustee.

Controlling precedent supports this reading a SIPA.  In
Sec. Investor Protection v. Morgan, Kennedy & Co., 533 F.2d 1314
(2d Cir. 1976) ("Morgan, Kennedy"), the Second Circuit held that
a trust created under a profit-sharing plan, not the employee-
beneficiaries of the trust, was a "customer" pursuant to SIPA.
Id.  The opinion discussed a number of factors that are
indicative of "customer" status.  These include:

- Making purchases with, transacting business with, having
  dealings with, and being known by the broker-dealer;

- Owning property held by the broker-dealer;

- Having "exclusive power" over investment decisions made
  with the broker-dealer;

- Having a legal capacity to have dealings with the broker-
  dealer;

- Having securities accounts in one's name at the broker-
  dealer; and

- Having a name that appears on the broker-dealer's books or
  records.

Id. at 1315, 1318.  The appellants did or had none of these
things; they are therefore not "customers" of BLMIS.  See Sec.
Investor Prot. Corp. v. Exec. Sec. Corp., 423 F. Supp. 94, 98
(S.D.N.Y. 1976) ("[A] 'customer' is clearly limited to persons
who maintain accounts with broker-dealers and who trade or

14

invest through them."). Indeed, "[t]he argument that, notwithstanding their complete anonymity and total incapacity to have dealings with the broker-debtor, the [claimants] were 'customers' of [the debtor] stretches that term wholly beyond its limits." Morgan, Kennedy, 533 F.2d at 1318.

SIPA's additional definitions of "customer" do not provide alternative avenues of relief for the appellants. The second definition includes "any person who has a claim against the debtor arising out of sales or conversions of such securities." 15 U.S.C. § 78lll(2) (emphasis supplied). The term "such securities" refers back to the first definition. Such securities are those that are "received, acquired, or held" by the debtor "from or for the securities accounts" of the investor. Id. The appellants do not fall within this provision for the same reason they do not fall within the provision discussed above: BLMIS has not "received, acquired, or held" securities "from or for the securities accounts" of any appellant. To the extent BLMIS held any securities for any securities account, it was for the securities accounts of the appellants' Feeder Funds. It is therefore impossible for BLMIS to have sold or converted securities in any account belonging to an appellant.

Lastly, the appellants do not fit within the final portion of SIPA's definition of customer. It defines customer to

include "any person who has deposited cash with the debtor for the purpose of purchasing securities."  In this case, BLMIS did not receive, acquire, or possess any property of the appellants because the property at issue belonged solely to the Feeder Funds.

It is a well established legal principle that the assets of a corporation belong to the corporation itself, not to its shareholders.  William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 31 (2010) ("[T]he capital or assets of the corporation are its property."); cf. Providence Bank v. Billings, 29 U.S. 514, 514 (1830) ("The great object of an incorporation is to bestow the character and properties of individuality on a collected and changing body of men."). Parallel principles of property ownership apply to all of the organizational forms of the Feeder Funds.  See, e.g., N.Y. Ltd. Liab. Co. Law § 601 (McKinney 2011) ("[A] member has no interest in specific property of the limited liability company."); Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1076 n.22 (2d Cir. 1977) ("[L]imited partners have no property right in the partnership assets."); Johnson v. Gore Wood & Co., [2002] 2 A.C. 1, 40 (Dec. 14, 2011), [2001] B.C.C. 820, 858 (H.L.) (Under common law of the U.K., applicable to Cayman Islands and the BVI, "[a] company's property belongs to the company and not to its shareholders.").  Thus, at the moment each appellant used

16

assets to purchase an ownership interest in a Feeder Fund, those assets became property not of the appellants but of the Feeder Fund.  Cf. In re J.P. Jeanneret Associates, Inc., 769 F. Supp. 2d 340, 369 (S.D.N.Y. 2011) (holding that plaintiffs that invested in Feeder Fund that, in turn, invested with Madoff do not have direct cause of action against defendant investment advisors because "[t]he Madoff losses . . . flowed directly to [the Feeder Fund], not to its limited partners").

For each of these reasons, therefore, the appellants do not qualify as "customers" of BLMIS under § 78lll(2) and do not have a SIPA claim.  Their Feeder Funds were the BLMIS customers and the appellants cannot seek a separate recovery as additional SIPA claimants.  As recently explicated by the Second Circuit, "the critical aspect of the 'customer' definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  In re Bernard L. Madoff Inv. Sec. LLC, 654 F.3d at 236 (citation and emphasis omitted).  It was the Feeder Funds who entrusted assets to BLMIS, and not the appellants.

The appellants make four principal arguments on appeal. With respect to the first two definitions of customer, they point out that the statutory definition does not explicitly limit securities accounts to accounts actually held at the debtor.  With respect to the third definition of customer, which

17

relates to an investor's deposit of cash with the debtor, the appellants emphasize that they intended that any cash they gave to the Feeder Funds be deposited with and managed by BLMIS. Next, they take issue with the Decision's analysis of Morgan, Kennedy, and rely on two other circuit decisions for the proposition that their intention to have their investments deposited with BLMIS satisfies the statute's requirements. Finally, they contend that the Bankruptcy Court was required to hold an evidentiary hearing to determine whether BLMIS owed the appellants a fiduciary duty since their Feeder Funds were BLMIS agents.  None of these arguments succeeds.

Appellants first argue that the Bankruptcy Court misconstrued SIPA by requiring that a "customer" have "its own direct account" with the debtor.  The appellants point out that the statute does not explicitly limit the term "securities accounts" to those held at the insolvent broker/dealer. Therefore, appellants argue, they have a claim on account of securities held by BLMIS "from or for" the appellants' securities accounts, as well as a claim on account of "sales or conversions of such securities."

The appellants' reading of SIPA § 78lll(2) ignores its plain meaning.  It is true that the statute does not use the appellants' formulation to explicitly limit the term "securities accounts" to those held at the debtor.  For the reasons

18

discussed above, however, the most natural reading of SIPA § 78lll(2) limits the "securities accounts" of investors to those established at the debtor so that the debtor can perform its functions for the investor "in the ordinary course of its business as a broker or dealer."  The definition thus excludes persons like the appellants who invest in separate third-party corporate entities like the Feeder Funds, that in turn invest their own assets with the debtor.  This reading of the definition of the term customer is amply supported by the other provisions of SIPA, as described above.

Moreover, the appellants' reading of the statute is devoid of any limiting principle.  Under appellants' reading, any investor who intentionally invests in a corporate entity that has a legal obligation to invest a significant portion of its assets with a third party would qualify as a "customer" of the third party.  Presumably, if this third-party entity were required to invest its funds with a fourth party and the claimants intended that such investments take place, the claimants would be "customers" of this fourth party as well.  Such a reading stretches the term customer "wholly beyond its limits."  Morgan, Kennedy, 533 F.2d at 1318.  Clearly, the drafters of SIPA did not intend such an absurd result.  See United States v. Dauray, 215 F.3d 257, 264 (2d Cir. 2000) (courts must interpret statutes to prevent absurd results).

The appellants have not grappled with any of the other SIPA provisions which reinforce the conclusion that a customer's "securities account" must be one established at the debtor. Moreover, the appellants do not explain precisely how their reading of the first definition of the term customer actually assists them. The appellants do not have securities accounts at the Feeder Funds. The appellants purchased ownership interests in the Feeder Funds. It is the Feeder Funds themselves that hold the only securities accounts at issue here.

Next, the appellants rely on SIPA's third definition of customer. They argue that they have "deposited cash with" BLMIS "for the purpose of purchasing securities" because they intended that the money that they invested in the Feeder Funds would go to BLMIS, and the transmission of a portion of these funds occurred automatically and inevitably due to the Feeder Funds' legal obligations. Again, this argument ignores the legal realities of the appellants' investments. They purchased ownership interests in the Feeder Funds. The investment proceeds became the sole property of the Feeder Funds. Each of the Feeder Funds pooled the money it received and exercised exclusive control over those assets. Those assets were used to pay claims on the fund and pursuant to the terms of controlling documents permitted the fund to pay its managers or general partners. There was simply no direct deposit of appellants'

20

cash into any account at BLMIS.  Thus, the appellants cannot be said to have "deposited cash with the debtor [BLMIS] for the purpose of purchasing securities."  15 U.S.C. § 78lll(2).  Instead, the appellants purchased ownership interests in the Feeder Funds, which in turn deposited assets with BLMIS for the purchase of securities.[4]

The appellants further argue that the Decision misconstrued the case law applying SIPA.  Unlike the claimants in Morgan, Kennedy, the appellants argue that they, not the Feeder Funds or their managers, had direct and controlling power to "entrust the assets to the debtor, to invest and reinvest, and to purchase and trade securities in the account as they saw fit."  Morgan, Kennedy, 553 F.2d at 1318.  The appellants claim that they could exercise such direct and controlling power by redeeming their shares or adding to their investments in the Feeder Funds.

A closer look at Morgan, Kennedy does not support appellants' assertions.  Even assuming that the appellants possessed the kind of control described in Morgan, Kennedy, Morgan, Kennedy did not rest its holding solely on the issue of control.  Rather, as discussed above, the opinion detailed a number of factors, such as making purchases with the debtor,

---

[4] It is worth noting again that the appellants do not argue that their investments in the Feeder Funds qualify for the exception to the definition of customer available to customers of banks, brokers and dealers.  SIPA § 78fff-3(a)(5).

transacting business with the debtor, having dealings with the
debtor, being known by the debtor, owning cash or securities
held by the debtor, having securities accounts in one's name
with the debtor, having a capacity to have dealings with the
broker-dealer, and having a name that appears on the debtor's
books or records.  Id. at 1315-19.  The appellants had none of
these qualities.  Moreover, Morgan, Kennedy explicitly states
that "exclusive power" to entrust the assets to the debtor, to
invest and reinvest, and to purchase and trade securities in the
account is a "required aspect[]" of customer status.  Id. at
1318 (emphasis supplied).  It does not state that "direct and
controlling power," which is the most that the appellants can
claim, is sufficient to achieve such status on its own.

Regardless, the appellants did not, in fact, have direct
and controlling power over the Feeder Funds' investments in
BLMIS.  Rather, the offering memoranda for each Feeder Fund
yields the exclusive right to make all decisions concerning the
investment and other disposition of the Feeder Funds' assets to
managers of the Feeder Funds.  For example, the offering
memorandum of Kingate Euro Fund provides that "[a]ll investment
decisions with respect to the general management of the Fund are
made by the Manager, who has complete authority and discretion
in the management and control of the business of the Fund," and
that "Shareholders will have no right or power to take part in

the management of the Fund."  Appellants provide no facts that would support a claim that these offering memoranda are inaccurate in their descriptions of the Feeder Funds' operations.

The appellants also point to two opinions from other circuits, Ahammed v. SIPC (In re Primeline Sec. Corp.), 295 F.3d 1100 (10th Cir. 2002) and Focht v. Heebner (In re Old Naples Sec., Inc.), 223 F.3d 1296 (11th Cir. 2000), in which certain points of law are announced regarding claimants who did not hand their cash to or make their checks payable to the debtor.  In these cases, persons were deemed to have deposited cash with a broker-dealer although those deposits were not made directly by them.  Together, these opinions stand for the proposition that in cases where an insolvent broker-dealer (or someone that an investor reasonably believed to be an agent of such a broker-dealer) promised to open a brokerage account on the investor's behalf but failed to do so, the investor may still be entitled to customer protection under SIPA.  See In re Primeline, 295 F.3d at 1107 ("If a claimant intended to have the brokerage purchase securities on the claimant's behalf and reasonably followed the broker's instructions regarding payment, the claimant is a 'customer' under SIPA even if the brokerage or its agents misappropriate the funds."); In re Old Naples, 223 F.3d at 1303 ("If an investor intended to have the brokerage purchase

23

securities on her behalf and reasonably followed the broker's instructions regarding payment, she can be considered a 'customer' under SIPA if the brokerage or its agents then misappropriate the funds.").

These two decisions do not assist the appellants.  The appellants do not claim that any Feeder Fund failed to open a brokerage account at BLMIS in the name of the Feeder Fund, as promised.  On the contrary, the appellants claim they were told that if they invested with the Feeder Funds, the Feeder Funds would invest a significant portion of the assets of the Feeder Funds with BLMIS.  This was in fact exactly what took place.  More significantly, as just discussed, with the transfer of cash or other valuable consideration to the Feeder Funds, the appellants acquired an ownership interest in their Feeder Funds.  Again, they received precisely the interest that they intended to purchase.

The appellants' final argument is that the Bankruptcy Court erred by refusing to hold a hearing on contested facts.  The appellants contend that the Trustee himself put certain facts directly at issue through filing an amended complaint (the "Amended Complaint") in <u>Picard v. Fairfield Sentry Limited, et al.</u>, Adv. Pro. No. 09-1239 (Bankr. S.D.N.Y. filed May 18, 2009), a related adversary proceeding brought against certain Feeder Funds and their top executive officers.  According to the

24

appellants, the Amended Complaint contains allegations that the Feeder Funds acted as BLMIS's partners and agents in the commission of securities fraud, and BLMIS owed the appellants a fiduciary duty.

Appellants have not shown that the Bankruptcy Court erred in failing to hold an evidentiary hearing before issuing its Decision on the Trustee's motion.  Appellants never requested the Bankruptcy Judge to hold an evidentiary hearing.  As such, the Bankruptcy Judge did not abuse his discretion in ruling on the motion based on the parties' submissions.

Regardless, even if the appellants' reading of the Amended Complaint is correct, the allegations in the Amended Complaint do not suggest that the appellants are "customers" of BLMIS under SIPA.  While the Amended Complaint raises serious questions about the knowledge and intent of the Feeder Funds' executive officers as to BLMIS's fraud, it does not contain allegations that the appellants were misled as to the nature of the interests they purchased in the Feeder Funds.  Nor do the appellants make such allegations elsewhere.  On the contrary, the Feeder Funds' offering memoranda make the nature of the appellants' purchases abundantly clear: they were buying ownership shares of the Feeder Funds, and thus had no property interest in any of the Feeder Funds' assets.  If, as the Second Circuit has noted, "the critical aspect of the 'customer'

25

definition is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities," these offering memoranda show that the appellants could not "entrust[]" any cash or securities to BLMIS since the cash and securities at issue belonged to the Feeder Funds.  In re New Times Sec. Servs., Inc., 463 F.3d at 128 (citation omitted). And the Feeder Funds did not "misappropriate" the assets in question because, as the appellants themselves point out, the Feeder Funds invested a portion of these assets with BLMIS as promised.  In re Old Naples, 223 F.3d at 1303.

      In sum, the existence of an agency or conspiratorial relationship between the Feeder Funds and BLMIS did not create any property interest for the appellants in the assets the Feeder Funds placed with BLMIS.  The appellants purchased and received an ownership interest in the Feeder Funds; the Feeder Funds placed a portion of the Feeder Funds' own assets with BLMIS.  SIPA simply "does not protect against all cases of alleged dishonesty and fraud."  In re New Times Sec. Servs., Inc., 463 F.3d at 130 (citation omitted).

26

<u>CONCLUSION</u>

The June 28, 2011 Decision of the Bankruptcy Court is affirmed.  These appeals are dismissed, and the Clerk of Court shall close the cases.


      SO ORDERED:

Dated:     New York, New York
             January 4, 2011

                                    DENISE COTE
                     United States District Judge